SCHARNHORST ET AL., APPELLEES, *v.* ZONING BOARD OF APPEALS, APPELLANT.

(No. A-208692—Decided March 29, 1971.)

Common Pleas Court of Hamilton County.

*Mr. Edward J. Utz,* for appellants.
*Mr. Dale Norman Breig,* for appellee.

LEIS, J. This matter is before the court for decision after testimony was heard on February 8, 1970 in part, and June 12, 1970 in part, and was taken under advisement by the court. The court has reviewed the transcript of the testimony, the exhibits submitted, and the briefs of counsel.

This matter arose as a result of an application for

rezoning of property in the city of Sharonville, Ohio, owned by the appellants herein. On April 29, 1964, an application for a hearing before the village council of a "Petition to Rezone Property on Sharon Road" was filed. The application (dated April 1, 1964), was filed under the name of Eugene Scharnhorst, and contained in the signatory section to the application the names of the appellants herein. The applicants asked the village of Sharonville Council to rezone their property from Residence B to Business A, giving as their reason the fact that property across the road from them is zoned as Business A, and included in the application were the following statements:

"Question: Special uses desired which are not permitted by present zone classification?

"Answer: For the same purposes as the other side of the street, namely business.

"Question: Special conditions or reasons believed justify change of restrictions?

"Answer: Business—this is at a main thoroughfare and which justifies business on both sides of the street and is no longer at its best use as residential property."

On June 1, 1964, the application for a hearing was referred to the Sharonville Planning Commission for consideration, and on June 26, 1964, the planning commission was given a written statement of the appellants' desires relative to the change of zoning of their property. The planning commission on July 8, 1964, reported that on June 24 a public hearing was held, and the zoning request was denied, and a letter of recommendation was sent to Sharonville City Council recommending that the request for rezoning be denied. On August 24, 1964, the council acted denying the rezoning request of the appellants. Proper notice of appeal was perfected by the appellants, and appeal was made to this court. The case was on the trial calendar of this court many times in regular sequence, and on November 20, 1967, counsel for both sides agreed to reset the case to some date in 1968, and advise the Assignment Commissioner of a new date, "as it is likly that this will be dismissed after January 1, 1968." The parties could not

get together on an agreement, and the case was again regularly scheduled on the trial calendar and heard initially on February 20, 1970.

The issue before this court is whether the City Council of Sharonville exceeded its authority in denying the application of the appellants for rezoning.

The property involved here is located immediately adjacent to Interstate 75 on Sharon Road. Interstate 75 at this point runs generally north and south, and Sharon Road east and west. There are exit and entry ramps leading from and to Interstate 75 to Sharon Road. The entry ramp proceeds in the northeast segment of the Interstate from Sharon Road to northbound Interstate 75 and the exit ramp from northbound Interstate 75 is in the southeast segment of the interchange. A bird's eye view of the area looking toward the north would show the following properties:

*NORTHWEST SEGMENT*

Princeton High School

Chester Road running north & south, intersecting Sharon Road

Howard Johnson Motel (Chester Rd)

Service State (Union 76) (" ")

*SOUTHWEST SEGMENT*

Residential and church

*NORTHEAST SEGMENT*

The area involved herein consisting of open acreage (Appellants' property)

Residential area of Prince Lane, Woodward Lane and Sharon Meadows Lane

*SOUTHEAST SEGMENT*

Holiday Inn Motel

Another motel

Golden Tee Golf Center

Two service stations

The area where rezoning is requested is located in the northeast segment. Next to the property herein, which involves at least 5 acres and is immediately adjoining to Interstate 75, are 3 residential lanes with single family residences, and next to these residences is industrial prop-

erty. Prior to the construction of Interstate 75, the property herein was zoned as "residential" but in June of 1969 a master plan was adopted by Sharonville, changing the zoning of the property to "S C"—shopping center classsification. Directly across Sharon Road the property under the March 15, 1969 Master Plan indicates its zoning as "M S"—motorist service.

The appellants contend that the new zoning under the master plan further restricts the use of their property to a shopping center classification, and that this classification is contrary to the "best use" theory in land classification. They further argue that their property on the north side of Sharon Road should be the same zone as that on the south side of Sharon Road, namely motor service.

The testimony in the trial brought out the fact that Sharon Road is a heavily travelled motor thoroughfare with many people, not residents of the area, travelling to and from their places of employment, and to other areas both east and west of Interstate 75, as they exit or enter the Interstate. Testimony also shows that many travellers on Interstate 75 exit at the Sharon Road interchange for car service, motel accommodations and recreation.

Mr. Ellis Thompson was called by the appellants as an expert in real estate matters. His testimony, in substance, proposed that the highest and best use of the land was for "highway service" use. He said that, "anything that will accommodate the motoring public on Interstate 75 is badly needed, such as service stations, food facilities and lodging." He stated that these types of facilities reflected the spirit of the Federal Bureau of Roads when they originally laid out the exit and entrance ramps for Sharon Road, and that the bureau seldom puts an interchange at anything other than a state highway. The Sharon Road Interchange was an exception to the general rule. Mr. Dennis Larkin testified for the city of Sharonville. Mr. Larkin was a Master Plan expert from Cleveland, Ohio, and was associated with the firm that prepared the Master Plan for Sharonville. When asked whether the service stations presently in the interchange area were adequate to handle traf-

fic on Interstate 75, he said that "it is difficult for anyone to ascertain whether there are enough, or too many service stations. * * * It is quite possible that additional service stations would be justified at the interchange. * * * It all depends on how these service stations are developed." He stated that the general plan that was drawn up for Sharonville would be looking forward to 1988 for the complete development of its objectives. He said that the main problem during this period would be that of moving heavy traffic. He suggested that one remedy to this problem would be the elimination or limitation of traffic conflict points to the greatest degree possible.

The court has studied the plats, the photograph, the general plan, and other exhibits accepted as evidence.

In the preface to Metzenbaum's 3 volume work on the Law of Zoning, the following statement appears:

"It should never be forgotten that zoning is not an unbridled license, that in every act in connection therewith, the guiding rule should be *reasonableness.*"

Zoning ordinances are a valid exercise of the police power. Zoning plans are recognized as an important function of municipal government in the interest of the public welfare, safety and health. A property owner in any municipality adopting a zoning plan has the constitutional right, however, not to be denied his property in any respect, without due process of law by such legislative enactments.

By what standards must a court judge the validity of a zoning ordinance? First, there is a presumption of the reasonableness, validity and constitutionality of ordinances, which applies fully to zoning ordinances and amendments of zoning ordinances. (See 8 McQuillan on Municipal Corporations, Section 25.295.) Such a presumption can not prevail, however, in the face of showing unreasonableness or arbitrariness. The Supreme Court of Ohio has held that a property owner has no vested right in zoning as it is; that such zoning can be amended for the public good (*Curtiss* v. *Cleveland,* 166 Ohio St. 509). It is established that the general scheme of zoning may be valid, yet when applied to particular property and a particular set of

facts and circumstances may be so arbitrary and unreasonable as to result in a confiscation, and such a situation, as applied to the disputed property, is void. In ascertaining whether the zoning amendment requested herein is in the public interest, the court must determine each case upon its particular facts.

Coming then, to the matter before it, the court has to evaluate the issue of reasonableness of the zoning ordinance. The zoning at the time this appeal was filed in 1965 was "Residence." Intervening between that date and now, is the Master Plan of Sharonville, which shows the zoning to be for a shopping center type of area. The recommendation is that the land for this purpose consists of 5 acres, and would include 3 land areas owned by 3 different persons. Sharonville says that they oppose the change of zoning to Business A for the reason that it would generate more traffic in the area. This reasoning seems incongruous to the facts. It stands to reason that a shopping area would not reduce the traffic in the area. The opposite result would be more logical. As stated before, the court is of the opinion that traffic herein is more or less "pass through" type of traffic. On page 12 of the master plan, Sharonville is shown to have a population of 9720 in 1967, as compared to the overall Hamilton County population of 959,473. Local population and their needs is a factor in zoning. Also, it is observed that in 1967 residential land acreage covered 714 acres out of a total Sharonville acreage of 4,932 acres. These statistics are indicative of the nature of Sharonville's economy, namely industrial and commercial. As states on page 47 of the master plan:

"Normally a city does not have 57% of its land zoned for industry as does Sharonville * * * the land zoned for industry in the city is suitable only for industrial development."

"Sharonville has a high percentage of land zoned for commercial development. There is some justification for this, considering that there are three freeway interchanges in the community and an expanding need for automobile oriented businesses such as gas stations, and motels."

On page 3 of the master plan this statement appears: "Motor service areas should be encouraged to the west and northeast adjacent to the freeways well away from the center shopping area in concentrated centers rather than strip development."

All these references point to the fact that Sharonville's existence is primarily industrial and commercial. The need for shopping centers for its citizens seems incidental and minor to the needs for motor service type of centers. Tri-County Shopping Center and the Central Business District of Sharonville are more suitable to the needs of the citizens of Sharonville. This is the reason behind the appellants' appeal of the zoning ordinance. Their reasoning fits into the concept of the master plan. The court observes that all the motor service facilities are on one side of Sharon Road, namely the southeast side. With more traffic contemplated in this area, it should be logical that some motor service facilities should be on the north side of the road, to prevent needless left turns by motorists into oncoming traffic of multiple lanes. The court believes this would be in the interest of public safety, health and welfare.

The court also concurs in the argument of counsel for the appellants when he states in his brief as follows: "To take individual lots and say they have to combine to form at least five acres before they can be utilized for anything but residential purposes, when immediately across the street and surrounding them, is business and industrial, amounts to telling these people that they have to join in and combine and have one big unit. This has no reasonable relation to the public health, safety and welfare."

The court is of the opinion that the property area herein zoned as residential property is not advantageously zoned to the highest and best use of the land, and most adaptable to the need of the area, and the zoning as it presently exists is arbitrary and unreasonable, and is more theoretical than practical, under the particular facts herein.

The court rules that the zoning as it presently exists in the matter before it is unconstitutional, unreasonable, and arbitrary. The area at issue should be rezoned to a busi-

ness A zoning as requested by the appellants, or in lieu thereof, to a zoning that will fit the need for motor service types of businesses.

*Order reversed.*